**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**JASPER DIVISION**

| | |
|---|---|
| **LINDA BEASLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 6:13-CV-1768-VEH |
| | ) |
| **CAROLYN COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff Linda Beasley ("Beasley") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for disability and disability insurance benefits ("DIB"). Beasley timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[1] The court has carefully considered the record and, for the reasons which follow, finds that the

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

decision of the Commissioner is due to be **AFFIRMED**.

## II.     FACTUAL AND PROCEDURAL HISTORY

Beasley was 54 years old on her date last insured, December 31, 2006. (Tr. 13, 54, 133). She has a high school degree. (Tr. 29). She previously worked as a restaurant manager. (Tr. 28, 42-43). Beasley alleged disability since October 1, 2006, because of neck pain, a heel spur, and high blood pressure. (Tr. 106, 133, 137).

Beasley protectively filed applications for a period of disability and DIB on April 29, 2010. (Tr. 54, 133). The Social Security Administration denied these applications on June 28, 2010. (Tr. 55-57). She timely requested and appeared at a hearing before an administrative law judge ("ALJ"). (Tr. 47-53). The hearing was held on January 6, 2012, and the ALJ issued a decision, dated March 15, 2012, denying Beasley's application. (Tr. 23,19). The Appeals Council ("AC") denied Beasley's request for review on July 26, 2013. (Tr. 1-4).

Beasley filed a complaint with this court on September 24, 2013, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on February 14, 2014. (Doc. 8). Beasley filed a supporting brief (Doc. 11) on April 21, 2014, and the Commissioner responded with her own (Doc. 13) on May 20, 2014.

## III.    STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**IV.    STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the

Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

> (1)   whether the claimant is currently employed;
> (2)   whether the claimant has a severe impairment;
> (3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
> (4)   whether the claimant can perform his or her past work; and
> (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.

1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

## V.    **ALJ FINDINGS**

After consideration of the entire record, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 1, 2006, through her date last insured of December 31, 2006.

3. Through the date last insured, the claimant had the following medically determinable impairments: restless leg syndrome, obstructive sleep apnea, hypothyroidism, and hyperlipidemia.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments.

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2006, the alleged onset date, through December 31, 2006, the date last insured.

(Tr. 15-19).

## VI.  ANALYSIS

The court may reverse a finding of the Commissioner only if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[2] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Beasley contends that the ALJ disregarded objective diagnostic tests and a treating physician's opinion. She argues that even though these pieces of evidence came after her date last insured, they establish that she had severe impairments from shoulder and neck pain[3] prior to that date. (Doc. 11 at 2-3). On this basis, Beasley contends that the ALJ's decision was not supported by substantial evidence.

---

[2] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

[3] The ALJ found Beasley to have non-severe impairments of restless leg syndrome, obstructive sleep apnea, hypothroidism, and hyperlipidemia, but Beasley does not argue that any of these singly or in combination amount to a severe impairment. Her arguments for disability relate only to shoulder and neck pain.(Doc. 11 at 2-3, 16). Nevertheless, the court has reviewed the record as it relates to the previously mentioned impairments found by the ALJ, and finds that there was substantial evidence for the ALJ's findings that they were not severe.

"The 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The Eleventh Circuit has held that the claimant's burden of showing severity is mild:

> Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The key issue in this case is whether evidence relating to a claimant's condition several months after the date she was last insured has probative value for her period of eligibility. According to the former Fifth Circuit, "[t]he Social Security Act is also clear in requiring that disability must be proven to exist <u>during the time that the claimant is insured</u> within the meaning of the special insured status requirements of the Act." *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979) (emphasis added). The Eleventh Circuit has stated, in an unpublished opinion, that a retrospective diagnosis, that is, "a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date," only supports a

7

finding of disability "when that opinion was consistent with pre-insured-date medical evidence." *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011) (citing *Payne v. Weinberger*, 480 F.2d 1006, 1007–08 (5th Cir.1973) (holding that the ALJ erred in determining that the claimant was not disabled when a retrospective diagnosis, along with all other medical evidence, supported a finding of disability)); *see also Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (holding that "[a] retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period" and citing cases from the First, Second, Eighth, Ninth, and Tenth Circuits that are in accord).

Beasley focuses on three pieces of evidence that post-date her date last insured: a May 2007 MRI that showed disc protrusions in her back, a nuclear body scan from May 2007[4] showing arthritic changes, and the June 2007 statements of a treating physician, Dr. Swaid Swaid, whose record stated that Beasley's symptoms of pain "have been present for 6 months." (Doc. 11 at 17). The first two are results of tests that indicate her situation as of several months after her insurance eligibility ended. They occurred in May of 2007 (Tr. 171, 173), and so, without any opinion from a medical source, they do not support the existence of any conditions as of December

---

[4] At one point in her brief, Beasley says that this scan occurred in June 2007. (Doc. 11 at 16). However, the record of the scan states that it was performed on May 17, 2007. (Tr. 171).

31, 2006.

The third piece, however, is a statement — or, rather, two statements — from a treating physician. Dr. Swaid examined Beasley on June 5, 2007. (Tr. 180). This was her first visit to Dr. Swaid's practice. (Doc. 11 at 9). In the patient history section, Dr. Swaid noted "Beasley is a 55 year-old female who presents to the office with neck pain . . . Her symptoms have been present for 6 months and they are aggravating and constant but can be worse on some days." (*Id.*) Beasley came back to Dr. Swaid two days later, on June 7, 2007. (Tr. 187). Her patient history section for this visit was nearly identical to the previous: "The patient is a 55-year-old female who presents to the office with neck pain and bilateral shoulder pain . . . Over the last 6 months or so these symptoms have chronically worsened. The pain is aggravating and constant in nature." (*Id.*). Beasley contends that because the six month period prior to her visits to Dr. Swaid would extend into early December of 2006, these statements support the existence of a severe impairment during her period of eligibility, which ended on December 31, 2006. (Doc. 11 at 9, 16).

The ALJ did not discuss any statements by Dr. Swaid in her findings. (Tr. 13-10). The Eleventh Circuit has held that a treating physician's medical opinion should be given significant weight, absent a finding of good cause to disregard it. *Lewis v. Callahan,* 125 F.3d 1436 (11th Cir. 1997) ("The ALJ must clearly articulate the

reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error"); *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) ("We adopt the position of the Second and Seventh Circuits that a treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat the claimant until after the relevant determination date.").

In this case, it is doubtful whether the statements presently under discussion in Beasley's patient history are Dr. Swaid's "medical opinions," or just his record of Beasley's statements. Context suggests the latter. They came from Beasley's first two visits to Dr. Swaid, so he had no prior firsthand knowledge of her condition. The patient history seems to be based only on her self-reported symptoms, which would mean the statements were not medical opinions entitled to any written discussion in the ALJ's findings. *See Moua v. Colvin*, 541 F. App'x 794, 797 (10th Cir. 2013) (unpublished) (holding that because treatment notes only "document[ed] [claimant's] complaints and chronicle[d] the pain medications and treatment [the doctor] prescribed," "there was no pertinent medical opinion for the ALJ to weigh"); 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as "judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions").

On the other hand, if the statements are best understood as Dr. Swaid's medical opinions, then the ALJ was in error for failing to discuss them, since a treating physician's opinions must be considered during the determination. *Boyd*, 704 F.2d at 1211. However, such an error would be harmless, not grounds for reversal. Dr. Swaid's statements were made after Beasley's date last insured, and such a diagnosis must be corroborated by pre-insured date evidence. *Mason*, 430 F. App'x at 832; *Estok*, 152 F.3d at 640. Unfortunately for Beasley's case, there is no such corroborating evidence in the record.

The only relevant evidence apparently in Beasley's favor that precedes the date last insured comes from her visit to the Jasper Family Practice Center on August 30, 2006. During that visit, she complained of tension in her shoulder and pain in her lower back, as well as restless legs. (Tr. 17, 579). As noted by the ALJ, her physical examination showed increased neck and shoulder muscle tone, and she was given Flexeril. (Tr. 17, 580). However, the examining physician diagnosed Beasley only with restless leg syndrome, making no diagnoses related to her neck or back pain. (Tr. 17, 581). On October 13, 2006, a few days after her alleged onset date, she had a follow-up appointment to discuss her restless leg syndrome. At this visit, the records show, she complained only of continued problems with restless leg syndrome, not of any back, neck or shoulder pain. (Tr. 17, 588-91). This suggests, reasonably, that she

11

was no longer experiencing problems in her low back, neck, and shoulder.

The next medical record comes from a second follow-up visit on January 17, 2007, where she reported that newer medication had "helped a lot" to treat her restless leg syndrome. (Tr. 306). As the ALJ noted, she again did not report any problems related to her back, neck, or shoulder. (Tr. 17, 305-06). Beasley's complaints of neck and shoulder pain did not begin to appear in the record consistently until February 19, 2007. (Tr. 307-08). Several months later, Beasley herself told her chiropractor that her cervical and mid-back pain had begun in February 2007. (Tr. 378).

All of these records were discussed by the ALJ in her findings (Tr. 17-18), demonstrating that she gave them adequate consideration. The most that is demonstrated by the medical evidence on record is that, at one point (August 2006), Beasley complained of back pain and shoulder tension, but after receiving medication she ceased reporting these problems for six months. This is insufficient to establish that she had any limitations on her ability to work, as required for a finding of severe impairment. *McCruter*, 791 F.2d at 1547. Therefore, there was substantial evidence to support the ALJ's finding that she did not have a severe impairment from lower back, neck, or shoulder pain before her date last insured, on December 31, 2006.[5]

---

[5] At two points, Beasley also argues that the ALJ improperly relied on a non-medical source (Philip Tankersley, a chiropractor) to support the finding that her impairment was not severe. (Doc. 11 at 13, 15). In her findings, the ALJ wrote:

## VI. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is due to be, and hereby is, **AFFIRMED**. A separate final judgment will be entered.

**DONE** and **ORDERED** this the 19th day of December, 2014.

                                        **VIRGINIA EMERSON HOPKINS**
                                        United States District Judge

---

The undersigned notes that in a comprehensive clinical examination in September 2007, the claimant reported that she had experienced a gradual onset of pain, starting in February 2007, which is after her date last insured and consistent with when the record reflects the claimant began complaining regularly of neck and shoulder symptoms.

(Tr. 18). Here, it is clear that the ALJ is not citing Tankersley's own opinions about Beasley's condition or the results of his examination. Instead, she is citing Beasley's own statements that she made to Tankersley. Therefore, whether or not Tankersley is an acceptable <u>medical source</u> for the ALJ to rely upon is not relevant in this instance, and this argument is without merit.